UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-20533-WILLIAMS/MCALILEY

WINDY LUCIUS,

    Plaintiff,

v.

ILOV305 I, LLC,

    Defendant.

_____/

# REPORT AND RECOMMENDATION ON VERIFIED MOTION FOR DEFAULT FINAL JUDGMENT

Plaintiff, Windy Lucius, filed a Motion for Default Final Judgment, which the Honorable Kathleen M. Williams referred to me for a report and recommendation. (ECF Nos. 18, 19). Defendant, ILOV305 I, LLC has not filed a response and the time to do so has passed.

**I.     Background**

Plaintiff is visually impaired, and she relies on screen reader software to use her computer. (ECF No. 5 at ¶¶ 3-4). Defendant owns and operates a specialty restaurant located at 1060 Ocean Drive, Miami Beach, Florida, along with an adjunct website for that business, https://sugarfactory.com (the "Website"). (*Id*. at ¶¶ 6, 8).

Plaintiff filed an Amended Complaint alleging that Defendant violated Title III of the Americans with Disabilities Act ("ADA") by denying her access to the Website because the Website is not compatible with VoiceOver screen reader software on Plaintiff's

computer that could translate its visual content into an auditory equivalent. (*Id.* at ¶ 11). Plaintiff served Defendant with the Amended Complaint and summons on March 16, 2022. (ECF No. 13). Defendant has not filed a response to it, and no attorney has entered an appearance on its behalf.[1]

On April 8, 2022, the Clerk entered default against Defendant for failure to plead or otherwise defend, pursuant to Rule 55(e) of the Federal Rules of Civil Procedure. (ECF No. 16). Plaintiff thereafter filed her Motion for Default Final Judgment requesting injunctive and declaratory relief, and an award of attorneys' fees, costs, and litigation expenses. (ECF No. 18). As explained below, I recommend that the Court grant the Motion.

## II. Liability

### A. Standard

A court may enter a default judgment against a defendant who has failed to plead or otherwise defend against the lawsuit. *See* Fed. R. Civ. P. 55(b)(2). Before it may do so, the Court must determine that there is "a sufficient basis in the pleadings for the judgment entered," which finding is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quotation marks and citation omitted). When a defendant defaults, it admits as true all well-pleaded factual allegations in the complaint. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

---

[1] Defendant may only litigate through an attorney because it is an entity. *See Potter v. Altman*, 647 F. App'x 974, 976 (11th Cir. 2016) ("It is well-settled that a corporate entity must appear and litigate through counsel, and cannot proceed *pro se*.") (citation omitted).

**B.     Analysis**

Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To state a claim under Title III, Plaintiff must allege that (1) she is a *disabled individual*; (2) Defendant owns, leases, or operates a place of *public accommodation*; and (3) Defendant *discriminated* against Plaintiff within the meaning of the ADA. *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12182(a)) (emphasis added).

The Amended Complaint alleges the first element of an ADA claim, as it states that Plaintiff is legally blind and, thus, is a disabled individual. (ECF No. 5 at ¶ 3); 42 U.S.C. §12102(1)(A), (2)(A) (defining the term "disability" as a physical or mental impairment that substantially limits at least one or more major life activities, and specifically lists "seeing" as a major life activity).

As for the second element, Plaintiff alleges that Defendant "owns and operates a place of public accommodation which is a specialty restaurant branded as "SUGAR FACTORY." (ECF No. 5 at ¶ 6) (capitalization in original). Plaintiff, though, does not allege that Defendant's physical restaurant violates the ADA. Instead, Plaintiff alleges that Defendant's website does so. (*Id*. at ¶¶ 24-26). The ADA provides an extensive list of public accommodations, including "a restaurant, bar, or other establishment serving food

or drink." 42 U.S.C. § 12181(7)(B). However, this list includes only establishments with a physical location; websites are not included. 42 U.S.C. § 12181(7).

The Eleventh Circuit has not decided whether a website is a place of public accommodation within the meaning of the ADA. It did address the issue in a now vacated opinion,[2] *Gil v. Winn-Dixie Stores, Inc.*, where the majority held that "websites are not a place of public accommodation under Title III of the ADA." 993 F.3d 1266, 1277 (11th Cir. 2021). The *Gil* Court reasoned as follows:

> The statutory language in Title III of the ADA defining "public accommodation" is unambiguous and clear. It describes twelve types of locations that are public accommodations. All of these listed types of locations are tangible, physical places. No intangible places or spaces, such as websites, are listed. Thus, we conclude that, pursuant to the plain language of Title III of the ADA, public accommodations are limited to actual, physical places.

*Id*. at 1276-77. Although *Gil* is no longer law, I find this reasoning persuasive and adopt it here.[3]

Plaintiff does not direct the Court to any contrary authority. (ECF No. 18 at 4-5). Plaintiff does cite recent guidance from the United States Department of Justice, but it does not state that a website is a place of public accommodation. *See* GUIDANCE ON WEB

---

[2] On December 28, 2021, the Eleventh Circuit granted a Petition for Panel Rehearing and vacated its decision in *Gil* because "[d]ue to the expiration of the injunction while the appeal was pending and the absence of any formal award of declaratory relief, the appeal was rendered moot." *Gil v. Winn-Dixie Stores, Inc.*, 21 F.4th 775, 776 (11th Cir. 2021).

[3] Notably, the dissent in *Gil* agreed with the majority that websites themselves are not places of public accommodation under Title III of the ADA. *Gil*, 993 F.3d at 1285 n.1 (Jill Pryor, J., dissenting) ("I am not arguing that the website in and of itself was a place of public accommodation under the ADA, but I disagree with the majority opinion's decision to fashion new circuit law on that issue, an issue on which the circuits are split.").

ACCESSIBILITY AND THE ADA (March 18, 2022), https://beta.ada.gov/web-guidance (last accessed Sept. 6, 2022). Rather, this guidance states the government's position that "the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." *Id*. at *When the ADA Requires Web Content to Be Accessible*. It does not address whether the ADA applies because inaccessibility of a website is a matter of public accommodation, or of discrimination.

Although I conclude that Defendant's website is not a place of public accommodation, this does not mean that a website cannot be the subject of an ADA claim. This is because "the definition of discrimination provided in Title III [of the ADA] covers both tangible barriers, that is, physical and architectural barriers…and *intangible barriers*, such as…discriminatory policies and procedures that restrict a disabled person's ability to enjoy the…goods, services and privileges" of a physical place of public accommodation. *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002) (emphasis added). In other words, as long as a website operates as an intangible barrier to a physical establishment, and that physical establishment qualifies as a place of public accommodation, a plaintiff can state a claim for violation of the ADA.[4]

---

[4] I recognize that at times other divisions of this court examined the relationship between a defendant's website and its physical establishment and found that the website was a place of public accommodation. *See, e.g., Fuller v. Mazal Grp. LLC*, No. 18-cv-60456, 2018 WL 3584700, at *3 (S.D. Fla. July 25, 2018) (collecting cases). Given the statutory language of the ADA, and the reasons explained *infra*, I find that the Website is an intangible barrier that operates as a form of discrimination, rather than constitutes a place of public accommodation in and of itself.

In an unpublished decision, *Haynes v. Dunkin' Donuts LLC*, the Eleventh Circuit considered whether the plaintiff stated a claim that Dunkin' Donuts' website, which was not compatible with screen reader software, violated the ADA. 741 F. App'x 752 (11th Cir. 2018). Dunkin' Donuts acknowledged that its stores are places of public accommodation but argued that the plaintiff could not state a claim for relief because "its website is neither a place of public accommodation nor a good, service, facility, privilege, or advantage of its shops…." *Id*. at 753. The *Haynes* Court concluded that the plaintiff stated a plausible claim for relief under the ADA, but not because the website was a place of public accommodation. Rather, relying upon *Rendon*, the Court reasoned that:

> It appears that the website is a service that facilitates the use of Dunkin' Donuts' shops, which are places of public accommodation. And the ADA is clear that whatever goods and services Dunkin' Donuts offers as part of its place of public accommodation, it cannot discriminate against people on the basis of a disability, even if those goods and services are intangible.

*Id*. at 754 (citing 42 U.S.C. § 12182(a); *Rendon*, 294 F.3d at 1283)). The Court found that "the alleged inaccessibility of Dunkin' Donuts' website denies [plaintiff] access to the services of the shops that are available on Dunkin' Donuts' website, which includes the information about store locations and the ability to buy gift cards online." *Id*. In other words, the plaintiff stated a claim for violation of the ADA because Dunkin' Donuts' stores are places of public accommodation, thereby satisfying the second element of an ADA claim, and its website amounted to an intangible barrier, which satisfied the third element.

Applying the foregoing authority to the Amended Complaint, the relevant issue is not whether the Website is a place of public accommodation, but whether the Website

creates an intangible barrier that excludes Plaintiff from accessing the goods, services, and privileges of Defendant's physical restaurant, which *is* a place of public accommodation. As in *Haynes*, Plaintiff alleges that the Website allows users to, among other things, "purchase Couture Pops, various trinkets, and gift cards online" and provides "information on hours of operation [and] restaurant location." (ECF No. 5 at ¶ 9). It also "provides a link (OpenTable) to reserve a table for dining within the restaurant [and to] sign up for the restaurant's candy club." (*Id.*). Plaintiff further alleges that the Website "does not properly interact with the VoiceOver screen reader software technology that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals." (*Id.* at ¶ 11). These factual allegations are deemed admitted by virtue of Defendant's default. *See Tyco Fire & Sec., LLC*, 218 F. App'x at 863.

      The ADA provides that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services ...." 42 U.S.C. § 12182(b)(2)(A)(iii). Title 28 C.F.R. § 36.303(b)(2) lists "screen reader software" as an example of an auxiliary aid or service for "individuals who are blind or have low vision." Plaintiff alleges that Defendant fails to make the Website accessible to visually impaired people who must use screen reader software. (ECF No. 5 at ¶ 11). Plaintiff further alleges the specific barriers on the Website and describes aspects of the Website that are inaccessible. (*Id.* at ¶ 24). The Amended Complaint thus properly pleads the final element, that Defendant discriminated against her,

7

within the meaning of the ADA. *See, e.g., Haynes*, 741 F. App'x at 754 (holding that "failure to make [services of Dunkin' Donuts' shops that are available on Dunkin' Donuts' website] accessible to the blind can be said to exclude, deny, or otherwise treat blind people differently than other individuals because of the absence of auxiliary aids and services.") (quotation marks and citation omitted).

In sum, for the reasons explained above, I conclude that Defendant's website is not a place of public accommodation. Defendant nevertheless violated Title III of the ADA because the Website restricts Plaintiff's ability to access the goods, services, and privileges of Defendant's physical restaurant, which is a place of public accommodation, and thus the Website operates as an intangible barrier to a public accommodation. *Rendon*, 294 F.3d at 1283; *Haynes*, 741 F. App'x at 754. Therefore, there is a sufficient basis in the pleading for the Court to enter final judgment against Defendant.

**III.  Attorneys' fees, costs, and litigation expenses**

Plaintiff seeks an award of attorneys' fees totaling $4,560.00, and costs and litigation expenses totaling $1,502.00. (ECF No. 18 at 15). The ADA authorizes the Court to award the prevailing party "a reasonable attorney's fee, including litigation expenses, and costs". 42 U.S.C. § 12205. In light of Defendant's default, there is no dispute that Plaintiff is the prevailing party. I therefore turn to the amount of attorney's fees, costs, and expenses that Plaintiff is entitled to recover.

**a.  Attorneys' fees**

"A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action

8

and the reasonableness of the time claimed for the action." *Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) (citing *ACLU of Ga. v. Barnes*, 168 F.3d 427, 432-33 (11th Cir. 1999)). "The first step in computing a reasonable fee is to determine the lodestar, which is the product of the number of hours reasonably worked by a lawyer and a reasonable hourly rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (citation omitted).

The reasonable hourly rate is determined by "[t]he prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997) (citation omitted). The relevant market is where the case is filed. *ACLU*, 168 F.3d at 427 (citation omitted).

Plaintiff requests an hourly rate of $400.00 for his attorney, J. Courtney Cunningham, Esq. (ECF No. 18 at 13). Mr. Cunningham has approximately 30 years' experience in litigation, government relations and public policy, and has handled hundreds of cases for persons with disabilities alleging ADA discrimination. (*Id.* at 14). Based upon the record and the Court's own knowledge and experience, I recommend that the Court accept Mr. Cunningham's hourly rate of $400.00, which is consistent with the hourly rate awarded for similar work in this district. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted) (the Court may use its own knowledge and experience in determining the reasonableness of attorneys' fees); *Gomez v. Canaima, LLC*, No. 19-23182-Civ, 2020 WL 5898748, at *1 (S.D. Fla. Sept. 17, 2020), *report and recommendation adopted*, 2020 WL 5894076, at *1 (S.D. Fla. Oct. 5, 2020))

9

(finding hourly rate of $350.00 reasonable for Mr. Cunningham's associate with nine years' experience in an ADA case); *Lucius v. Roche-Bobois U.S.A., Ltd., , LLC*, No. 20-cv-24166, at ECF No. 17 (S.D. Fla. Dec. 18, 2020); (finding Mr. Cunningham's hourly rate of $400.00 reasonable in an ADA case).

Mr. Cunningham's billing records reflect that he devoted 11.4 hours to this litigation. (ECF No. 18-2). I have carefully reviewed those documents and find that those hours were reasonably expended. *Id*. Accordingly, I recommend that the Court award attorneys' fees totaling **$4,560.00**.[5]

### b. Costs and Expenses

Plaintiff seeks $502.00 in costs, comprised of $402.00 in filing fees and $100.00 for service of process. (ECF No. 18-2 at 5). Title 28 U.S.C. § 1920 sets forth what may be taxed as costs. The $402.00 filing fee that Plaintiff paid to the clerk is taxable under § 1920 and Plaintiff is entitled to recover it. 28. U.S.C. § 1920(1); *Ramos v. Arba Constr.*, No. 20-25192-CIV, 2021 WL 4482659, at *3 (S.D. Fla. Aug. 25, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 4480169 (S.D. Fla. Sept. 30, 2021).

Costs for service of process are also included under § 1920. Private process servers' fees, however, may not exceed the cost of having the U.S. Marshal's Service effectuate service. *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007) (citing *EEOC v. W&O, Inc.*, 213 F.3d 600, 623-24 (11th Cir. 2000)). At the time service of process occurred, the U.S. Marshals charged $65.00 per hour for each item served. The process

---

[5] 11.4 hours x $400.00 = $4,560.

10

server's affidavit reflects that he first attempted service at an address believed to belong to Defendant's registered agent but was unsuccessful, and therefore served Defendant at its place of business. (ECF No. 13). Given that the process server was required to travel to two different addresses through no fault of Plaintiff, the record supports Plaintiff's request for $100.00 in process server fees.

In sum, I recommend that the Court award costs in the amount of **$502.00**.

As for litigation expenses, Plaintiff seeks a total of $1,010.00, comprised of $1,000.00 for the expert report of ADASure and $10.00 for the notarization fee for Plaintiff's counsel's attorney's fees affidavit. The record reflects that Plaintiff retained ADASure to analyze Defendant's Website to determine its compliance with the ADA. Plaintiff attached the report of ADASure to his Motion for Default Judgment, which describes the barriers that exist in Defendant's website that prevent visually impaired individuals from accessing the goods and services of Defendant's restaurant. (ECF No. 18-1).

Plaintiff also attached a copy of the Curriculum Vitae of Michael R. McCaffrey, who prepared the ADASure expert report, (*id*.), and Plaintiff's attorney attested that his client incurred the expert fee requested. (ECF No. 18-2). "A prevailing ADA plaintiff may recover expert fees as a litigation expense." *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1353 (S.D. Fla. 2006) (citations omitted). I have reviewed the ADASure expert report, and I find the expert's $1,000 fee is reasonable.

However, the Court will disallow recovery of the notarization fee as unreasonable. Title 28 U.S.C. §1746 allows for unsworn declarations under the penalty of perjury. A notary was not necessary.

For the foregoing reasons, I recommend that the Court award litigation expenses in the amount of **$1,000.00**.

## IV. Conclusion

Therefore, I **RESPECTFULLY RECOMMEND** that the Court:

1. Grant Plaintiff's Motion for Default Final Judgment (ECF No. 18);

2. Enter default final judgment in favor of Plaintiff Windy Lucius and against Defendant ILOV305 I, LLC;

3. Declare and find that Defendant's website, https://sugarfactory.com, (the "Website") is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, because the Website is not fully and equally accessible to and usable by visually impaired individuals.

4. Declare and find that Defendant has violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, because Defendant failed to monitor and maintain the Website to ensure that it is fully and equally accessible to and usable by visually impaired individuals.

5. Order that Defendant, **no later than January 6, 2023**, alter the Website to make it accessible to and useable by visually impaired individuals to the full extent required by Title III of the ADA, including but not limited to providing the appropriate auxiliary aids such that visually impaired individuals are able to

comprehend the Website. Defendant must continually update and maintain the Website to ensure that it remains fully accessible to and useable by visually impaired individuals.

6. Order that if Plaintiff believes the injunction has been violated, she shall give written notice (including reasonable particulars) to Defendant of such violation. Defendant shall have thirty (30) calendar days from receipt of the written notice to investigate and correct any alleged violations. If Defendant fails to correct the violations, Plaintiff may then seek relief from the Court.

7. Award Plaintiff reasonable attorney's fees in the amount of **$4,560.00**, costs in the amount of **$502.00** and litigation expenses in the amount of **$1,000.00**, for a total amount of **$6,062**.**00**.

## V.     Objections

**No later than 14 days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida this 7th day of September 2022.

*[signature]*
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Kathleen M. Williams
      Counsel of record

      ILOV305 I, LLC.
      1060 Ocean Drive
      Miami Beach, FL 33139